**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **LEE A. JENKINS, on behalf of himself and all others similarly situated,** | **8:14CV41** |
| **Plaintiff,** | |
| **vs.** | **FINDINGS AND RECOMMENDATION** |
| **CHRISTOPHER E. PECH and PECH, HUGHES, & MCDONALD, P.C. d/b/a Litow & Pech, P.C., A Fictitious Name,** | |
| **Defendants.** | |

This matter is before the court on the plaintiff's, Lee A. Jenkins (Jenkins) Amended Motion for Class Certification (Filing No. 41).  Jenkins filed a brief (Filing No. 42) and an index of evidence (Filing No. 43) in support of the motion.  The defendants, Christopher E. Pech (Pech) and Pech, Hughes, & McDonald, P.C. d/b/a Litow & Pech, P.C., a fictitious name (PHM and Litow & Pech respectively) filed a brief (Filing No. 48) with an index of evidence (Filing No. 48-1) in opposition to class certification.  Jenkins filed a brief (Filing No. 78) and index of evidence (Filing No. 79) in reply.  The defendants filed a sur-reply (Filing No. 96).  Thereafter, Jenkins filed a supplemental brief (Filing No. 102) and index of evidence (Filing No. 103).

**INTRODUCTION**

This action pertains to the defendants' use of a standard letter and specific envelope in an effort to collect debts in Nebraska.  Jenkins filed the instant action on February 6, 2014.  **See** Filing No. 1 - Complaint.  On February 12, 2014, Jenkins filed an amended complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA) and Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 to 59-1623 (NCPA) for the defendants' routine practice of sending a misleading letter (Filing No. 6-1 - Letter) and envelope (Filing No. 6-2 - Envelope) concerning Jenkins' past-due debt.  **See** Filing No. 6 - Amended Complaint.  Jenkins seeks to certify, under both the FDCPA and NCPA, classes of Nebraska residents who received the same letter and envelope.

## FACTUAL BACKGROUND

Pech is an attorney who at times acts as a debt collector.  **See** Filing No. 6 - Amended Complaint; Filing No. 11 - Answer.  Pech is the owner and operator of PHM, which is engaged, in part, in the business of collecting debts due or alleged to be due to third party creditors.  **Id.**  PHM's place of business is in Cedar Rapids, Iowa.  **Id.**  Jenkins is a resident of Omaha, Nebraska.  **Id.**

At some point prior to this action, Jenkins opened a credit card account serviced by FIA Card Services, N.A. (FIA Card Services).  **See** Filing No. 6 - Amended Complaint.  Jenkins eventually fell into debt and FIA Card Services retained PHM to collect Jenkins' debt.  **Id.**  On November 14, 2013, the defendants sent Jenkins a letter wherein the defendants advised they were retained to represent FIA Card Services in the collection of Jenkins' debt of $28,884.03.  **Id.**; Filing No. 6-1 - Letter.  "Pech, Hughes, & McDonald, P.C." appears in the letter's letterhead and signature block.  **See** Filing No. 6-1 - Letter.  The letter concludes with Pech's typewritten signature.  **Id.**  The envelope containing the letter listed Litow & Pech as the return addressee.  **See** Filing No. 6-2 - Envelope.

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit.  "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met."  **Bouaphakeo v. Tyson Foods, Inc.**, 765 F.3d 791, 802 (8th Cir. 2014) (quotation omitted).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)     the class is so numerous that joinder of all members is impracticable;
> (2)     there are questions of law or fact common to the class;
> (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The United States Supreme Court has summarized the four basic requirements as:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1428 (2013); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' [however] Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (**quoting** *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)); **see also** *Powers v. Credit Mgmt. Servs., Inc.*, No. 13-2831, 2015 WL 160285, at *2 (8th Cir. Jan. 13, 2015).  "Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action."  *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing** *Amchem*, 521 U.S. at 614).  Rule 23(b) allows a class action if:  (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication.  **See** Fed. R. Civ. P. 23(b).  In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B):  "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."

Jenkins proposes a class action on behalf of two classes pursuant to Fed. R. Civ. P. 23.  The first class, referred to as the "Letter class," consists of:

> (i) all persons residing in Nebraska (ii) to whom Defendants Mr. Pech and/or Pech, Hughes sent, or caused to be sent, a letter in the form of Exhibit A, (iii) in an attempt to collect a purported obligation which, as shown by the nature of the alleged obligation, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

**See** Filing No. 41 - Amended Motion for Class Certification p. 1.  The second class, referred to as the "Envelope class," consists of:

> (i) all persons residing in Nebraska (ii) to whom Defendants Mr. Pech and/or Pech, Hughes sent, or caused to be sent, a letter in the form of Exhibit A contained in an envelope in the

3

form of Exhibit B, (iii) in an attempt to collect a purported obligation which, as shown by the nature of the alleged obligation, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

*Id.*

Jenkins contends the letter he received is a standard letter the defendants always use in Nebraska and the envelope, which has a preprinted standard return address, was used during the relevant timeframe.  **See** Filing No. 42 - Brief; Filing No. 78 - Reply; Filing No. 102 - Supplemental Brief.   Jenkins alleges the defendants committed the following violations:  1) the defendants did not include in the letter the alleged debt would be considered valid by the debt collector if the recipient did not make a dispute within thirty days; 2) the envelope states a fictitious name different from the actual debt collector; and 3) there is a lack of a licensed Nebraska attorney's meaningful involvement in reviewing an account.  *Id.*   The defendants generally deny class certification is appropriate.  **See** Filing No. 48 - Response; Filing No. 96 - Sur-reply.  The court will review, seriatim, each of the requirements Jenkins must satisfy with regard to class certification.  The defendants' argument against class certification is principally based on the ascertainability of the proposed classes, or lack thereof, thus the court will first analyze the ascertainability requirement as a threshold issue.

### A.     Ascertainability

In addition to Rule 23's four explicit requirements, courts also recognize an implicit requirement that a class be ascertainable.  **See** *In re Nexium Antitrust Litig.*, No. 14-1521, 2015 WL 265548, at *6 (1st Cir. Jan. 21, 2015) (recognizing the ascertainability requirement in class actions); *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (same); *Brown v. Kerkhoff*, 279 F.R.D. 479, 496 (S.D. Iowa 2012) (same).  "Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)."   *Carrera*, 727 F.3d at 306.  However, "[c]lass members need not actually be ascertained prior to certification, but each individual's class membership must be ascertainable at some stage in the proceedings." *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127 (S.D.N.Y. 2011).  "The requirement of ascertainability simply means that the description of a proposed class must be

4

sufficiently definite 'so that it is administratively feasible for the court to determine whether a particular individual is a member.'" ***Eastwood v. S. Farm Bureau Cas. Ins. Co.***, 291 F.R.D. 273, 278 (W.D. Ark. 2013) (**quoting** 7A CHARLES ALAN WRIGHT *ET AL.*, **FEDERAL PRACTICE AND PROCEDURE** § 1760 (3d ed. 2005)).   "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." ***Carrera***, 727 F.3d at 307-08 (**quoting** WILLIAM B. RUBENSTEIN & ALBA CONTE, **NEWBERG ON CLASS ACTIONS** § 3:3 (5th ed. 2011)).   "[T]he ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials[.]" ***Hayes v. Wal-Mart Stores, Inc.***, 725 F.3d 349, 359 (3d Cir. 2013).   "To ascertain the class, [t]he Court should not be required to resort to speculation, or engage in lengthy, individualized inquiries." ***Brown***, 279 F.R.D. at 496 (citation omitted).

The defendants contend the proposed class is not ascertainable because there is no evidence how and why prospective class members incurred a debt, thus there is no evidence a debt was incurred as defined by the FDCPA.  **See** Filing No. 48 - Response; Filing No. 96 - Sur-reply.  The defendants assert identifying the nature of the debt on a credit card is an inherently individualized issue which defeats class certification.  *Id.* Jenkins contends the class is ascertainable by using the defendants' records, which differentiate between personal and business debts, the creditors' records, and, if necessary, by asking a simple question of prospective class members on notice forms. **See** Filing No. 78 - Reply; Filing No. 102 - Supplemental Brief.

Counsel for the defendant recently raised similar arguments in opposition to class certification in ***Gold v. Midland Credit Mgmt., Inc.***, No. 13-CV-02019-BLF, 2014 WL 5026270 (N.D. Cal. Oct. 7, 2014).   In ***Gold***, the Northern District of California addressed whether a class is ascertainable wherein the underlying debt originally owed was allegedly incurred primarily for personal, family, or household purposes.  **See *Gold***, 2014 WL 5026270 at *3-5.   The court rejected defense counsel's ascertainability arguments, noting "[n]umerous federal courts throughout the country have rejected similar arguments and certified consumer class action cases under the FDCPA[,]" and ultimately concluded the class was ascertainable even though the plaintiff, and potential class members, could not recall the purpose of all debts, if there is evidence the primary amount came from credit card purchases primarily for personal or household use.  *Id.*

The *Gold* court reasoned "acceptance of Defendants' arguments would effectively eliminate class action litigation under the FDCPA because in all cases, separating out the business debt from the consumer debt would pose a bar to class certification." *Id.*; see also *Selburg v. Virtuoso Sourcing Grp., LLC*, No. 1:11-CV-1458-RLY-MJD, 2012 WL 4514152, at *3 (S.D. Ind. Sept. 29, 2012) ("[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.  If that need alone precluded certification, there would be no class actions under the FDCPA.").  The court stated "class identification will proceed according to Plaintiff's proposal and begin with identification, using Defendants' records, of accounts held in individual as opposed to business names.  Further identification of class members may be carried out through use of a court-approved notice and claim form." *Id.*  The court finds *Gold*, and the cases cited therein, persuasive.  Further, the numerous cases Jenkins cited in his supplemental brief are persuasive of finding the class in this instance is ascertainable.  **See** Filing No. 102 - Supp. Brief p. 4-6.

The defendants chiefly argue the classes are not ascertainable because the purpose of an individual's debt is unknown and Jenkins has not offered a method of identifying whether a debt was incurred primarily for personal, household, or family purposes.  As an example, the defendants point to Jenkins and argue he used his credit card for business purposes.  First, although originally there was confusion about Jenkins' debt, Jenkins' debt was incurred primarily for personal, household, or family purposes.  **See** Filing No. 103-1 Ex. 1 - Jenkins' Second Supp. Decl. ¶ 5; Filing No. 79-13 Ex. 1G - Jenkins' Depo. 60:22 - 61:3.  Second, the fact Jenkins' or a prospective class members' credit card account may contain a business related charge does not alter the purpose of the credit card account as *primarily* being used for personal, family, or household purposes.  A minor business related expense will not defeat class certification.  **See, e.g.**, *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 518 (N.D. Ill. 2008) ("A $60.00 business related expense does not establish that the card was not *primarily* used for personal, family, or household purposes.") (emphasis in original); *In re CBC Cos., Inc. Collection Letter Litig.*, 181 F.R.D. 380, 385 (N.D. Ill. 1998) ("Under [the debt collector's] reasoning, it would be impossible to bring a FDCPA class action if there was a chance a possible class member used a credit card for a business purpose.  Only those classes whose claims revolve around debts which on

their face could definitively be associated with personal purposes could bring a class action under the FDCPA.  Such a finding would be contrary to the clear remedial goals of the FDCPA.").

Third, there are sufficient administratively feasible methods of ascertaining class members without a fact-intensive inquiry.  Similar to *Gold*, Jenkins will first begin with identifying prospective class members using the defendants' records.  For example, if the applicant is a business, which the defendants' records would show, the applicant would be excluded.  **See** Filing No. 78 - Reply p. 11 (**citing** Filing No. 79-2 - Pech Depo.; Filing No. 79-18 - Grimm Depo.; Filing No. 79-8 - Hamilton Depo.).  Additionally, as the defendants admit, to the extent it possesses account statements, such "'records of the original creditors,' . . . would show how and why the class members incurred their debts."  **See** Filing No. 48 - Response p. 14.[1]  If further identification is needed, Jenkins can identify class members through use of a court-approved notice and claim form.  **See** *Gold*, 2014 WL 5026270, at *5 ("Further identification of class members may be carried out through use of a court-approved notice and claim form."); ***Butto v. Collecto Inc.***, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) (recognizing class members can be asked a single question to determine whether the individual's debt at issue qualifies as a consumer debt; ***Wilkerson v. Bowman***, 200 F.R.D. 605, 610 (N.D. Ill. 2001) (stating "class members can be asked a single question to determine whether they are entitled to relief") (**citing** ***Wells v. McDonough***, 188 F.R.D. 277, 279 (N.D. Ill. 1999) (persons who have business debt can be "weeded out [of FDCPA class] by asking the class members one question").

## B.    Rule 23(a) Requirements

### 1.    Numerosity

The first prerequisite a plaintiff must meet under Rule 23(a) is numerosity.  Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable."  **See** Fed. R. Civ. P. 23(a)(1).  Rule 23(a) "requires only the impracticality, not the impossibility, of joinder."  ***U.S. Fid. & Guar. Co. v. Lord***, 585 F.2d 860, 870 (8th Cir. 1978).  A plaintiff need only show "that joining all members of the class would be difficult."  ***Caroline C. By & Through Carter v. Johnson***, 174 F.R.D.

---

[1] The parties have not explained how the records show the debts were incurred for personal reasons.

452, 462 (D. Neb. 1996) (citations omitted). "There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show joinder is impracticable." ***Harris v. D. Scott Carruthers & Assoc.***, 270 F.R.D. 446, 450 (D. Neb. 2010) (**citing** ***Hale v. AFNI, Inc.***, 264 F.R.D. 402, 404 (N.D. Ill. 2009)). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class." ***Estate of Mahoney v. R.J. Reynolds Tobacco Co.***, 204 F.R.D. 150, 153 (S.D. Iowa 2001).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class . . . ." ***Cortez v. Nebraska Beef, Inc.***, 266 F.R.D. 275, 289 (D. Neb. 2010) (**quoting** ***Evans v. U.S. Pipe & Foundry Co.***, 696 F.2d 925, 930 (11th Cir. 1983)). "[W]here the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." ***Id.*** Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." ***Chesher v. Neyer***, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing** ***Gen. Tel. Co. of Sw. v. Falcon***, 457 U.S. 147, 160 (1982)).

The defendants admitted they "mailed letters in the form of Exhibit A to approximately 560 individuals with Nebraska addresses." **See** Filing No. 43-8 - Response to Interrog. No. 7. The defendants' records contain the identities of the individuals who received these letters. **See** Filing No. 43-2 - Pech Depo. After consideration of the number of persons in the proposed Letter class, the nature of the action,[2] the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds Jenkins satisfies the numerosity requirement for the Letter class.

Regarding the Envelope class, Jenkins argues the envelope was in use as late as November 15, 2013, the date of the postmark on the envelope sent to Jenkins. **See** Filing No. 6-2 - Envelope. Based on the 560 Exhibit A letters the defendants sent from June 2013 to February 2014, the time the lawsuit was filed, Jenkins argues the defendants sent on average 62 letters a month. **See** Filing No. 42 - Brief p. 16.

---

[2] The defendants reassert their argument about the ascertainability of the debt in opposition to each enumerated factor for class certification. The court will not revisit the issue for each factor of the class certification analysis.

Multiplying 62 by 5½ months, the time between June 2013 and November 15, 2013, Jenkins argues the defendants sent Nebraska residents approximately 340 envelopes in the form of Exhibit B containing letters in the form of Exhibit A.  *Id.*  Jenkins cites to the defendants' temporary mailroom employees to support this calculation.  However, according to Pech's testimony, the envelope in the form of Exhibit B was not supposed to be used and "someone grabbed . . . some of these envelopes and . . . used them."  **See** Filing No. 43-2 - Pech Depo. 96:21-100:23.  Pech testified he was not aware how this envelope was used or whether it was used in other instances.  Jenkins' calculation is based on the assumption the envelopes were otherwise used.  Although Jenkins received his letter in an Exhibit B envelope, this does not mean the Exhibit B envelopes were used prior to or after that time or the extent Jenkins' claims.[3]  While the "balance should be struck in favor of a finding of numerosity, since the court has the option to decertify[,]" here there is no evidence the envelopes were used absent Jenkins receiving the envelope and the court cannot create numbers from speculation.  Accordingly, because the court will not speculate as to the use of the Exhibit B envelopes, the court finds the Envelope class does not satisfy the numerosity requirement.[4]

## 2.   Commonality

Second, a plaintiff must prove the element of commonality.  **Amchem**, 521 U.S. at 613.  Rule 23(a)(2) requires there be "questions of law or fact common to the class."  **See** Fed. R. Civ. P. 23(a)(2); **see also** **Wal-Mart Stores**, 131 S. Ct. at 2550-51.  "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'"  **DeBoer v. Mellon Mortg. Co.**, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting** **Paxton v. Union Nat. Bank**, 688 F.2d 552, 561 (8th Cir. 1982)).  However, "[t]he rule does not require that every question of law or fact be common to every member of the class."  **Paxton**, 688 F.2d at 561.  "In the context of an FDCPA class-action case, some courts have stated commonality is established when the plaintiff alleges that all class members received the same collection notice."  **Harris**,

---

[3]  There is some discussion about labels being used on the envelopes, but there is insufficient evidence to conclude the envelopes were used with or without labels during the relevant timeframe.
[4]  Because the court finds Jenkins has not established the numerosity requirement for the Envelope class, the court will not address the remaining class certification requirements for the Envelope class.

270 F.R.D. at 451. Nevertheless, Rule 23(a)(2) "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions"'". ***Wal-Mart Stores***, 131 S. Ct. at 2551 (**quoting** Richard A. Nagareda, ***Class Certification in the Age of Aggregate Proof***, 84 N.Y.U. L. Rev. 97, 132 (2009)). The Court stated in ***Wal-Mart Stores***:

> What matters to class certification . . . is not the raising of common 'questions'— even in droves —but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.*

In this matter, common issues link the prospective class members and are related to the case's resolution. The claims of the class and class representative arise from the same practice as the defendants sent a standard-form letter to Nebraska addresses that is alleged to omit particular language. **See** Filing No. 43-2 - Pech Depo. 85:15-24. A common question of law exists whether the defendants' letter violated the FDCPA and the NCPA, and a common answer will resolve this matter. Resolution of the common legal issue in this matter does not require in-depth individualized inquiry. Accordingly, Jenkins satisfies the element of commonality.

### 3.    Typicality

Third, a class representative has the burden to show typicality of his claims in relation to the other putative members of the class. ***Amchem***, 521 U.S. at 613. Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." ***Chaffin v. Rheem Mfg. Co.***, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." ***Alpern v. UtiliCorp United, Inc.***, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." ***DeBoer***, 64

F.3d at 1174.  However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."  ***Elizabeth M. v. Montenez***, 458 F.3d 779, 787 (8th Cir. 2006).

The court finds Jenkins has sufficiently met the requirements for typicality. Jenkins claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the proposed class.  Jenkins alleges each class member was sent the same letter and subjected to the same violations.  **See** Filing No. 43-2 - Pech Depo. 85:15-24; **see also *Harris***, 270 F.R.D. at 452 (finding form letters sent to class members that purport to violate the FDCPA fulfills the typicality prong). There is no in-depth individualized inquiry or unique defenses which would defeat this requirement of certification.  The defendants briefly argue Jenkins' claim is not typical because the letter was not the initial letter Jenkins received.  **See** Filing No. 96 - Sur-reply p. 31.  Upon review of the evidence, no other documents were sent to Jenkins; therefore, the defendants' argument does not defeat a finding of typicality.  **See** Filing No. 103-4 - Pech Depo. 120:1-121:23; 171:12-172:3).  Accordingly, the court finds Jenkins' claims are typical of the proposed class.

### 4.    Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation.  ***Amchem***, 521 U.S. at 613.  Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class."  **See** Fed. R. Civ. P. 23(a)(4).  "The focus of Rule 23(a)(4) is whether:  (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  ***Paxton***, 688 F.2d at 562 (**citing *Gonzales v. Cassidy***, 474 F.2d 67, 72 (6th Cir. 1973)).

Jenkins has shown he shares a common interest with the putative class members and, as the class representative, he will vigorously prosecute the interests of the class through qualified counsel.  There is no evidence of a conflict between Jenkins' claims and those of the putative class members.  While Jenkins has expressed some confusion about the case and has not recalled all details and legal intricacies about this case, as identified by the defendants, Jenkins has demonstrated a sufficient

understanding of this case, his responsibilities to the class, and the expectations as a class representative.  **See** Filing No. 43-5 - Jenkins' Decl.; Filing No. 79-13 - Jenkins' Depo.  Additionally, Jenkins is represented by competent counsel.  **See** Filing Nos. 43-1 - Reinbrecht Decl.; 43-3 - Bragg Decl.; 43-4 - Car Decl.  Counsel is experienced in class action lawsuits, as well as consumer protection issues, and has been approved as class counsel in numerous cases.  Therefore, counsel should be appointed pursuant to Rule 23(g).

**C.     Rule 23(b)(3) Requirements**

For class certification Jenkins must also prove this action may be maintained under Rule 23(b)(1), (2), or (3).  Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision."  ***Bryant v. Bonded Accounts Serv./Check Recovery***, 208 F.R.D. 251, 261 (D. Minn. 2000).

**1.     Predominance**

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  ***Amchem***, 521 U.S. at 623 (**citing** 7A CHARLES ALAN WRIGHT ET AL., ***FEDERAL PRACTICE AND PROCEDURE*** § 1777, p. 518-19 (2d ed. 1986)).  Rule 23(b)(3) "permits certification only if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."  ***Comcast Corp.***, 133 S. Ct. at 1432.  "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member."  ***Halvorson v. Auto-Owners Ins. Co.***, 718 F.3d 773, 778 (8th Cir. 2013) (**citing *Avritt v. Reliastar Life Ins. Co.***, 615 F.3d 1023, 1029 (8th Cir. 2010)).  "[W]hen one or more of the central issues in the action are common to the class and can be said to

predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." ***Harris***, 270 F.R.D. at 453 (**quoting *Jenkins v. Raymark Indus., Inc.***, 782 F.2d 468, 472 (5th Cir. 1986)) (alteration in original). "A claim is not appropriate for class treatment where it requires individualized, fact intensive inquiry into facts and circumstances unique to each putative class member." ***In re Express Scripts, Inc.***, No. 4:05MD01672HEA, 2015 WL 128073, at *6 (E.D. Mo. Jan. 8, 2015) (**citing *Blades***, 400 F.3d at 569-72).

To determine whether common questions of law and fact predominate, the court will analyze Jenkins' claims under the Letter class. In all of Jenkins' briefing, Jenkins merely argues "[b]ecause of the standardized nature of Defendants' conduct, common questions predominate." **See** Filing No. 42 - Brief p. 23-24.[5] While true the defendants engaged in standardized conduct by sending form letters, this alone may not satisfy the predominance requirement. The Rule 23(b)(3) predominance inquiry is "far more demanding than the requirement of commonality." ***Luiken v. Domino's Pizza, LLC***, 705 F.3d 370, 377 (8th Cir. 2013) (internal quotation marks omitted).

Jenkins alleges the defendants committed two violations by sending the letter: 1) the letter violates 15 U.S.C. § 1692g(a) because the defendants omitted "by the debt collector" or similar language and 2) the defendants failed to conduct a "meaningful review" of accounts before sending the letter in violation of 15 U.S.C. § 1692e(3). **See** Filing No. 42 - Brief p. 3, 8-12.

With regard to Jenkins' first claim, recognizing the predominance requirement is more demanding than the commonality requirement, the court finds a common question whether the defendants' letter violated 15 U.S.C. § 1692g(a) predominates over any perceived or actual individual issues. Because of the nature of the defendants' conduct, sending a standard-form letter which omits "by the debt collector" or similar language, common evidence will show whether the defendants committed the alleged violations.

---

[5] There is no discussion of predominance in Jenkins' reply or supplemental brief. Interestingly enough, in the *175 pages* of briefing, the parties spent merely *three pages* addressing predominance, although the parties tangentially addressed predominance in their ascertainability and commonality arguments. Of course, this is not an invitation for additional briefing as the court is provided with adequate evidence to determine predominance. Although the defendants did note in their sur-reply that "[i]n [Jenkins'] Reply, Jenkins fails to discuss whether this action is maintainable under any of the subdivisions of Rule 23(b), and thus, concedes by silence that he cannot satisfy the requirements of Rule 23(b)." **See** Filing No. 96 - Sur-reply n.16.

As for Jenkins' "meaningful review" claim, even looking at the evidence in favor of class certification, the court finds common questions do not predominate over individual issues. As Pech testified, review of accounts depends on the circumstances of each account. **See** Filing No. 48-1 - Pech Depo. 48:5-50:19; 73:7-79:9. Review varies based on the client, the nature of the account, and the documentation provided to the defendants. **Id.** Whether the defendants conducted a "meaningful review," assuming that is the correct standard under 15 U.S.C. § 1692e(3), requires an individual analysis of each account. Although Jenkins argues there is a standard review process and attorneys only spend limited time on an account, this does not address meaningfulness of review. The defendants' computerized system may show an attorney logged into the system to work on a particular account, but a simple number cannot quantify an attorney's review of the file for whether it was "meaningful." These individualized inquiries overwhelm any common questions and Jenkins has not identified any common evidence which would resolve this issue. The individual inquiries regarding what was reviewed, for how long, and whether the review was meaningful prevent a finding of predominance. **See, e.g., *Halvorson***, 718 F.3d at 779 (reversing certification where "individual inquiries . . . will predominate . . . and 'overwhelm questions common to the class'").

### 2.    Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." **See** Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." ***Estate of Mahoney***, 204 F.R.D. at 161 (**quoting *Valentino v. Carter-Wallace, Inc.***, 97 F.3d 1227, 1234 (9th Cir. 1996)). "Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial *dis* economy." ***Estate of Mahoney***, 204 F.R.D. at 161 (**quoting *Smith v. Brown & Williamson Tobacco Corp.***, 174 F.R.D. 90, 94 (W.D. Mo. 1997)) (emphasis in original).

Resolution of Jenkins' 15 U.S.C. § 1692g(a) claim through a class action rather than through hundreds of individual actions seeking damages, which would be costly

14

and duplicative, is the superior method for handling this litigation.  As a class action procedure, this common claim can be brought in one proceeding and preserve limited judicial resources.  The court is not presented with any threshold inquiries as to this claim that would weigh against certification.

**IT IS RECOMMENDED TO SENIOR JUDGE JOSEPH F. BATAILLON that**:

Jenkins' Amended Motion for Class Certification (Filing No. 41) be granted to include:

> (i) all persons residing in Nebraska (ii) to whom Defendants Mr. Pech and/or Pech, Hughes sent, or caused to be sent, a letter in the form of Exhibit A, (iii) in an attempt to collect a purported obligation which, as shown by the nature of the alleged obligation, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

with regard to Jenkins' 15 U.S.C. § 1692g(a) claim and denied as to Jenkins' proposed Letter class 15 U.S.C. § 1692e(3) claim and Envelope class 15 U.S.C. § 1692e(14) claim.

### ADMONITION

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 13th day of February, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge