IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEE A. JENKINS, on behalf of himself and all others similarly situated;<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>CHRISTOPHER E. PECH, PECH,HUGHES, & MCDONALD, P.C., d/b/a Litow & Pech, P.C., A Fictitious Name;<br><br>　　　　　　　　Defendants. | **8:14CV41**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the defendants' objection, Filing No. 114, to the Findings and Recommendation ("F&R") of the magistrate judge, Filing No. 110, on the plaintiff's motion for class certification, Filing No. 41.[1]

This is an action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Nebraska Consumer Protection Act, Neb. Rev. Stat.

---

[1] Also pending is the defendants' motion, Filing No. 128, to strike the plaintiff's second supplemental declaration, Filing No. 103-1. The defendant contends that Mr. Jenkins's Second Supplemental Declaration contradicts his earlier deposition testimony. *See* Filing No. 128-1, Brief at 3. To the contrary, the record shows that Mr. Jenkins responded at the deposition to the best of his recollection. *See* Filing No. 96-1, Index of Evid., Ex. A, Declaration of Tomio Narita ("Narita Decl."), Ex. AE, Jenkins Dep. at 61, 103; Filing No. 103-1, Second Supplemental Decl. at 1-2. He testified at his deposition that he believed he used the Bank of America credit card for a cash advance that he used to purchase a farm. Filing No. 96-1, Ex. A, Narita Decl., Ex. AE at 103. In his Second Supplemental Declaration, Jenkins acknowledges that his deposition testimony was mistaken and that he used a different credit card for the cash advance. Filing No. 103-1, Ex. 1, Second Supplemental Declaration at 2. Documents submitted in support of the declaration show that Jenkins received a cash advance on an MBNA credit card via a check in the amount of $12,462 on April 12, 2006. Filing No. 103-1, EX. 1, Jenkins's Second Supplemental Decl. at 2; Ex. A, Billing Records. Further, he has shown the farm was purchased and the deed was filed as a public record in Platte County, Nebraska on April 26, 2006. Filing No. 131-1, Index of Evid., Ex. A, Deed; Ex. B, Bank of America account statement at 1 (showing cash advance on November 29, 2007).

　　　The court finds the motion to strike should be denied and will consider the documents in connection with this motion.

§§ 59–1601–59–1623 ("NCPA").  The plaintiff alleges that the defendants' routine practice of sending a misleading debt-collection letter, attached to the amended complaint as Ex. A, violates these consumer protection statutes.  *See* Filing No. 6, Amended Complaint, Exs. A, Letter and B, Envelope.  Jenkins alleges defendants Christopher E. Pech, an attorney, and his law firm, Pech, Hughes, and McDonald, P.C. (hereinafter, collectively, PHM) violated the FDCPA and NCPA by (1) failing to state in the letter that the alleged debt would be considered valid <u>by the debt collector</u>; (2) stating a fictitious name on the envelope; and (3) failing to have meaningful involvement by an attorney in reviewing an account. [2]

The plaintiff moved for certification of two classes:  one that related to the letter and one that related to the envelope.  PHM opposed the motion, generally arguing with respect to both classes that the class was not ascertainable.  *See* Filing No. 48, Brief in Opposition at 4-13; Filing No. 110, F&R at 5.  With respect to the letter class, PHM argued that the proposed class is not ascertainable because there is no evidence as to whether the debt was incurred primarily for personal or household purposes rather than business or commercial purposes so as to fall within the ambit of the FDCPA.

The magistrate judge found that the plaintiff met the numerosity, commonality, typicality, and adequacy of representation requirements with request to the letter class, but not with respect to the envelope class.  Filing No. 110, F&R at 7-12.  The magistrate judge also found that the letter class was ascertainable under Fed. R. Civ. P. 23(b)(3),

---

[2] Under the FDCPA, a debt collector must send the debtor a written notice containing a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid <u>by the debt collector</u>." 15 U.S.C. § 1692g(a)(3). Further, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e(10).

2

but the envelope class was not. *Id.* at 6-7. Further, the magistrate judge determined that the plaintiff satisfied the Rule 23(b)(3) requirements of predominance and superiority with respect to the letter class. *Id.* at 12-15. The magistrate judge recommended granting class certification to the letter class, consisting of

> all persons residing in Nebraska (ii) to whom Defendants Mr. Pech and/or Pech, Hughes sent, or caused to be sent, a letter in the form of Exhibit A, (iii) in an attempt to collect a purported obligation which, as shown by the nature of the alleged obligation, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

Filing No. 110, F&R at 15.

PHM challenges the magistrate's findings, again arguing that Jenkins has failed to identify an ascertainable class. Filing No. 114, Objection at 2. PHM argues Jenkins has not shown the debts at issue fall under the coverage of the FDCPA and also argues that Jenkins is not an adequate representative of the class because he used the credit card account for a commercial purpose.[3]

I.   FACTS

In addition to the facts set out by the magistrate judge, the record shows that PHM sent out hundreds of letters in the form of Exhibit A to Nebraska residents. Filing No. 43-8, Index of Evid., Exhibit ("Ex.") 1, Reinbrecht Decl., Ex. 7, Defendant's Answers Plaintiff's Interrogatories, Set 1 at 6; Filing No. 43-2, Index of Evid., Ex. 1, Reinbrecht Decl., Ex.1A, Deposition of Christopher E. Pech, ("Pech Dep.") at 86, 110-11. The letter

---

[3] He also raises an additional challenge to Jenkins's adequacy as a representative, contending that the letter at issue was not the first communication with the debtor and arguing but that PHM's initial communication was an appearance in the Douglas County District Court action. The court finds that argument is specious. The record shows the entry of appearance contains the same allegedly violative language as the letter at issue. Filing No. 119-2, Index of Evid., Ex. 1, Declaration of William Reinbrecht ("Reinbrecht Decl."), Ex. 1A, Douglas County Court Appearance at 1. Further, the document does not appear to have been served on Jenkins. *Id.* at 2.

at issue is a standard template bearing the typewritten name, "Christopher E. Pech." *Id.* at 84, 89-90, 166-167. The letter states only that "the debt is assumed valid," without the qualifier "by the debt collector" as required by the FDCPA. Filing No. 6, Amended Complaint, Ex. A. Pech did not review each account before the letter was sent. Filing No. 79-16, Index of Evid., Ex. 2, Defendant's Responses to Plaintiff's Requests for Admission, Set Two at 2. He did not review the letter sent to the plaintiff. Filing No. 43-2, Index of Evid., Ex. 1, Reinbrecht Decl., Ex. 1A, Pech Dep. at 126. Further, the only review his firm conducted is a brief review of the computer screen shots containing minimal information. *Id.* at 73-74, 119.

Pech also testified that the firm "reviews" 500 new files each week using only a couple of attorneys to do the job. *Id.* at 69-70. Each of these "reviewing attorneys" also maintains a full schedule in addition to reviewing new files. *Id.* at 70-71. PHM's debt collection practice is highly automated. *Id.* at 51-54, 93-96, 165-67. In his deposition, Pech identifies information available on PHM's computer system, including a wide variety of electronic documentation contained in specific fields or compartments. *Id.* at 53-54.

The creditor of the account about which PHM sent a communication to Jenkins is FIA Card Services, N.A., ("FIA") which is part of Bank of America.[4] *Id.* at 171; Filing No. 79-7, Ex. 1A, Pech Dep. Ex. 7, Collection Notes at 1. PHM does not purchase debts for collection on its own. Filing No. 43-2, Index of Evid., Ex. 1, Reinbrecht Decl., Ex. 1A,

---

[4] *See also Repay v. Bank of Am., N.A.*, No. 12CV10228, 2013 WL 6224641, *1 (N.D. Ill. Nov. 27, 2013) (identifying FIA as a subsidiary of Bank of America Corporation and as a major servicer of Bank of America, N.A.'s credit cards and stating "FIA services many or all credit cards issued by [Bank of America].").

4

Pech Dep. at 170. PHM's only relationship with FIA is as counsel in collection cases for that entity. *Id.* at 171.

Pech testified the Jenkins file came to the firm electronically in a batch from another law firm. *Id.* at 93. The record also shows the PHM's standard automated "review" process includes a computerized "filtering" of new files. Filing No. 55-2, Index of Evid., Ex. 3, Reinbrecht Supp. Decl., Ex. 3A, Pech Dep. at 51-52; Filing No. 79-18, Index of Evid., Ex. 1, Reinbrecht Decl., Ex. 3A, Deposition of Tyler Grimm ("Grimm Dep.") at 27-28: Filing No. 80, Index of Evid. (sealed), Pech Dep. Ex. 3, New Account Review Computer Manual. Files are filtered as they come in by a "software script or something automated." Filing No. 79-18, Index of Evid. Ex. 1, Reinbrecht Decl., Ex. 3A, Grimm Dep. at 29-30. Tyler Grimm, an attorney and former PHM employee, testified he would open files that were on the exceptions list generated by the automated process. *Id.* at 30-31. Pech stated that a "judgment file," would not ordinarily include monthly billing statements from the creditor. Filing No. 55-2, Index of Evid., Ex. 3, Reinbrecht Decl., Ex. 3A, Pech Dep. at 49-50. The record shows that the initial data file that comes with the placement of a collection account contains information—client identifier, agency identifier, total balance, principal balance, cost balance, interest balance, and fee balance—as lines of data that are imported into the PHM system. *Id.* at 51-52; *see* Filing No. 79-3, EX. 1, Reinbrecht Decl., Ex. 1A, Pech Dep. Ex. 2. Tyler Grimm testified that his review consisted of a quick look at a computer screen to make sure there were no obvious problems with an account that were detected by the computer. Filing No. 79-18, Index of Evid., Ex.3A, Grimm Dep. at 30-31, 42-43. Only when something looks "odd" does an attorney actually open the file and

look quickly at the computer screen shot. *Id.* at 30-31, 38. He testified that, by number of cases, he worked mostly on consumer credit cases. *Id.* at 33-34. Grimm worked remotely out of his attic office in Des Moines. *Id.* at 42-44; Filing No. 79-11, Index of Evid., Ex.1E, Deposition of Elizabeth Levi ("Levi Dep.") at 23-24.

Both Grimm and PHM employee Linda Hamilton testified that PHM's computer system has the ability to record the time an attorney spent reviewing the computer record. Filing No. 79-18, Index of Evid., Ex. 1, Reinbrecht Decl., Ex. 3A, Grimm Dep. at 44; Filing No. 79-8, Index of Evid., Ex. 1, Reinbrecht Decl., Ex. 1B, Deposition of Linda Hamilton ("Hamilton Dep.") at 45-46. Further, the evidence shows the reviewing attorneys do not see the letters sent to debtors—they are produced overnight and sent to the mailroom in bulk. Filing No. 103-2, Index of Evid., Ex. 1, Reinbrecht Decl., Filing No. 103-7, Ex. 2E, Deposition of Julie Thomas at 9-10; Ex. 2F, Deposition of Michelle Daley at 14-16. Although Pech's typewritten signature appears on the letter, he does not review it before mailing. Filing No. 103-4, Ex. 1, Reinbrecht Decl., Ex.2B, Pech Dep. at 55; Ex. 2C, Grimm Dep. at 17-18, 46.

Linda Hamilton also testified that the firm's computer screens show a different color for business as opposed to consumer accounts. Filing No. 79-8, Ex. 1, Reinbrecht Decl., Ex.1B, Hamilton Dep. at 49, 61-62. Pech and Grimm testified that the firm could obtain the itemized account statements if they chose to do so. Filing No. 79, Index of Evid., Ex.1A Pech Dep. at 80-81; Ex.3A, Grimm Dep. at 41-42. Pech testified that various information can be obtained from PHM's computer system by running certain queries. Filing No. 79-2, Ex. 1, Reinbrecht Decl., Ex. 1A, Pech Dep. at 87, 168.

The record also shows Mr. Jenkins's account was solely in his name as an individual. Filing No. 79-13, Index of Evid., Ex. 1, Reinbrecht Decl., Ex.1G, Deposition of Lee A. Jenkins ("Jenkins Dep.") at 47-56. The Douglas County Court collection case against Jenkins was brought only against him personally and a judgment was entered against him individually for the full balance sought. *Id.*, Jenkins Dep. at 47-56; Filing No. 79-13 & 79-14, Jenkins Dep. Exs. 13 & 16. The letter to Jenkins was sent in reference to a Bank of America credit card account. *Id.*, Ex. 1G, Jenkins Dep. at 68. Jenkins testified that he normally used the credit card at issue for purchases of food, clothing and gasoline for his personal use. *Id.* at 60-61. The plaintiff does not seek actual damages on behalf of class members. Filing No. 104-1, Index of Evid., Ex. 1, Declaration of Tomio B. Narita, Ex. A6, Plaintiff's Response to Request for Production of Documents – First Set at 4.

II. LAW

    A. Class certification

In ruling on an objection to a magistrate judge's F&R on class certification, the court conducts a *de novo* review of the magistrate judge's findings. *United States v. Lothridge,* 324 F.3d 599, 600 (8th Cir. 2003); 28 U.S.C. § 636(b)(1). "Rigorous analysis" is necessary to ensure that the plaintiffs satisfied all Rule 23 requirements for certifying a class. *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 570 (8th Cir. 2015). This rigorous analysis often results in some overlap with the merits of the plaintiff's claim. *Wal-Mart Stores, Inc. v. Dukes*, —- U.S. ——, 131 S. Ct. 2541, 2551 (2011)

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Id.* at 2550 (quoting *Califano v.*

*Yamasaki*, 442 U.S. 682, 700–701, (1979)). Under Fed. R. Civ. P. 23, a class action may be maintained if the suit satisfies the criteria set forth in subdivision (a)—numerosity, commonality, typicality, and adequacy of representation—and it also must fit into one of three categories described in subdivision (b).[5] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 397 (2010) (noting that "[b]y its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action"); Fed. R. Civ. P. 23. "A party seeking class certification must . . . be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

The numerosity requirement is met if the class is so large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a). Commonality is met if there are "questions of law and fact common to the class." *Id.*; *see Dukes*, 131 S. Ct. at 2551. Commonality is not required on every question raised in a class action—the Rule "is

---

[5] As relevant herein, Rule 23(b) provides a class action may be maintained if the requirements of Fed. R. Civ. P. 23(a) are met and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," not merely "that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (stating that such claims must depend upon a common contention the is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). The burden on the plaintiff to prove typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The presence of a common legal theory, however, does not establish typicality when proof of a violation requires an individualized inquiry. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (involving a substantive due process claim that invariably "demands an exact analysis of circumstances before any abuse of power is condemned.") In certain contexts "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 131 S. Ct. at 2551 and n.5 (noting that "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class

9

claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

Further, the named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). The adequacy heading also factors in competency and conflicts of class counsel. Id. at 626 n.20. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Id. at 625-26 (quoting East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)).

With respect to the Fed. R. Civ. P. 23(b) criteria, the Supreme Court has instructed that Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of his or her claim is susceptible to classwide proof. Amgen Inc. v. Connecticut Ret. Plans and Trust Funds, ––– U.S. ––––, 133 S. Ct. 1184, 1196 (2013). Rather, all that is required is that a class plaintiff show that "common questions 'predominate.' " Id. (quoting Fed. R. Civ. P. 23(b)(3)). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Id. at 625. "[C]ommon questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 815 (7th Cir. 2012) (quoting In re Nassau County Strip Search Cases, 461 F.3d 219, 228 (2d Cir. 2006)). "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or

by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014); see *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). The Supreme Court has explicitly determined that it is "clear that individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 131 S. Ct. at 2558.

The class action mechanism was created to vindicate the rights of groups of people who individually would be without effective strength to bring their opponents into court. *Amchem Prods., Inc.*, 521 U.S. at 617; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

"Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013); see *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (recognizing the implicit requirement of ascertainability in class actions). A plaintiff must show, by a preponderance of the evidence, that the class is "currently and readily ascertainable based on objective criteria," *Carrera*, 727 F.3d at 306 (quoting *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Ascertainability plays a key role as part of a Rule 23(b)(3) class action lawsuit because:

> First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class. Second, it ensures that a defendant's rights are protected by the class action mechanism. Third, it ensures that

11

the parties can identify class members in a manner consistent with the efficiencies of a class action.

*Carrera*, 727 F.3d at 307.

### A. FDCPA and NCPA Generally

Congress enacted the FDCPA in 1977 for the primary purpose of eliminating abusive debt collection practices.[6] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1000 (8th Cir. 2011). "The Fair Debt Collection Practice Act (FDCPA) makes it unlawful for debt collectors to use 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 770 (8th Cir. 2001) (quoting 15 U.S.C. § 1692e). A debt collector who 'fails to comply with any [FDCPA] provision . . . is liable to [a plaintiff] for 'actual damage[s],' costs, 'a reasonable attorney's fee as determined by the court," and statutory 'additional damages.'" *Jerman,* 559 U.S. at 573 (quoting §15 U.S.C. §

---

[6] This action must be viewed in the context of the evolution of the debt collection business. In 2010, the Federal Trade Commission concluded that in today's collection system, "neither litigation nor arbitration currently provides adequate protection for consumers. The system for resolving disputes about consumer debts is broken." *See* Federal Trade Comm'n, *Repairing a Broken System: Protecting Consumers in Litigation and Arbitration* at 7 n.18 (July 2010) (hereinafter "Broken System"), http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf, Executive Summary at i-v; Some of the hallmarks of this broken system include lack of data integrity, lack of proof, inadequate documentation, robo-signing and other unfair and deceptive acts and practices. *Id.* Judges, advocates, academics, federal regulators, state regulators, and Congress have recently addressed the problems in the debt collection industry. *See* Consumer Fin. Prot. Bureau, *Fair Debt Collection Practices Act Annual Report* (Mar. 20, 2013); Federal Trade Comm'n, The Structure and Practices of the Debt Buying Industry at ii-iii (January 2013), https://www.ftc.gov/reports/structure-practices-debt-buying-industry (noting that debt buyers usually purchase bad debts in bulk portfolios, often in the form of a spreadsheet, and rarely obtain the underlying documents relating to the debt); *see also Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 4 (D.D.C. 2006); *Stratton v. Portfolio Recovery Assocs.*, LLC, 770 F.3d 443, 445-46 (6th Cir. 2014), as amended (Dec. 11, 2014); Bureau of Consumer Fin. Prot., Debt Collection (Regulation F), 78 Fed. Reg. 67848-01, 67850 (Nov. 12, 2013) (advance notice of proposed rulemaking).

1692k(a)).[7] The FDCPA does not specify the amount of statutory damages to be awarded, but it imposes ceilings: in class actions the named plaintiff may receive no more than $1,000 and the class as a whole no more than the lesser of either $500,000 or 1 percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B).

The FDCPA applies only to debts as they are defined in the statute—debts are obligations "of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are <u>primarily</u> for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). The FDCPA is not applicable to debts that arises from a commercial transaction. *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067 (9th Cir. 1992); *see Duffy v. Landberg*, 133 F.3d 1120, 1123 (8th Cir. 1998) (recognizing that the FDCPA applies to obligations arising out of a "consumer transaction").

When considering whether law firm's standardized collection letters violate the consumer debt collection practices statutes, the need to determine the consumer nature of a debt does not automatically preclude class certification. *Butto v. Collecto Inc.*, 290 F.R.D. 372, 382 (E.D. N.Y. 2013); *see Gold v. Midland Credit Mgmt., Inc.,* No. 13-CV-02019-BLF, 2014 WL 5026270, *3-*5 (N.D. Cal. Oct. 7, 2014) (stating "as many other courts have determined in considering class certification under the FDCPA, the mere fact that the debt collection agency does not segregate business and consumer debt

---

[7] Interestingly, the violation at issue in *Jerman* is similar to that at issue herein. *Jerman* involved allegations that defendant debt collecting law firm violated § 1692g, which governs contents of notices to debtors, by incorrectly stating that the plaintiff's debt would be assumed valid unless it was disputed <u>in writing</u>. See *Jerman*, 559 U.S. at 579.

13

accounts is not enough to thwart class certification" and finding it sufficiently administratively feasible to identify that class members and the nature of the their purchases by consulting the creditor's records and by propounding questions in a court-approved notice and claim form);[8] *Selburg v. Virtuoso Sourcing Grp., LLC*, 2012 WL 4514152, *3 (S.D. Ind. 2012) (stating that "[i]f [the need to show that the transactions involved in a particular case are consumer transactions] alone precluded certification, there would be no class actions under the FDCPA'") (internal quotation omitted); *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000)(stating that "'determinations of whether each transaction involved a "consumer debt" do not predominate over issues common to the class.'")(quoting *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 599 n.14 (E.D. Cal. 1999)); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) (rejecting the defendant's contention that definite identification was impossible as a result of defendant's failure to maintain records that identified the nature of the debt); *and Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998) (also stating that if the need to show the nature of transaction precluded certification, there would be no FDCPA class actions).

---

[8] Defendant has asked the court to take judicial notice of a later ruling in the *Gold* case on a motion for summary judgment. Filing No. 122-2, Defendants' Request for Judicial Notice in Support of Defendants' Opposition to Plaintiff's Statement of Objections to Magistrate Judge's Order, Ex. A; *Gold v. Midland Credit Mgmt., Inc.*, No. 13cv2019, Filing No. 113, Order (N.D. Ca. March 10, 2015). The court takes judicial notice of the case, has considered it and finds it is not relevant to the issues herein. The record in the *Gold* case shows the parties stipulated to decertification after summary judgment was granted in favor of the defendant on the unrelated issue of whether the defendant was a debt collector. *See id.*, Filing Nos. 112, Summary Judgment Order (Mar. 10, 2015); 114, Stipulation (Mar. 24, 2015).


The FDCPA "applies to the litigating activities of lawyers" and "imposes some constraints on a lawyer's advocacy."[9] *Jerman*, 559 U.S. at 600. In fact, attorneys are generally held to a higher standard. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 106-07 (1st Cir. 2014) (stating "[a]n attorney's imprimatur conveys authority," induces a consumer to act more quickly, and "reinforces the perception that it threatens immediate litigation"); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 301 (3d Cir. 2008) (stating "[u]nder the [FDCPA], attorney debt collectors warrant closer scrutiny because their abusive collection practices "are more egregious than those of lay collectors" and noting that attorneys have privileges such as the ability to file suit not applicable to lay debt collectors) (internal quotation omitted); *Nielsen v. Dickerson*, 307 F.3d 623, 632 (7th Cir. 2002) (noting that an attorney's letter, with the implicit message that the attorney has assessed the validity of the debt and is prepared to take legal action makes the attorney letter a particularly effective method of debt collection); *Avila v. Rubin*, 84 F.3d 222, 228-29 (7th Cir. 1996) (recognizing that a delinquency letter from an attorney conveys authority). Courts have held that an attorney must have direct and personal involvement in the mailing of the letter—by reviewing the file to determine whether the letter should be sent, or by approving the mailing based on recommendations of others—in order for it not to mislead the recipient as to the nature of his involvement with the debt. *See, e.g., Avila*, 84 F.3d at 229 (a debt collection letter from an attorney implies that the attorney supervised or actually

---

[9] "A 1986 amendment applied the FDCPA's substantive prohibitions to litigation activities of attorneys who regularly engage in consumer debt collection." See *Powers*, 776 F.3d at 570; *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

controlled the procedures by which the letter had been sent); *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2nd Cir. 1993) (noting that there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with FDCPA requirements that communications must not be false, deceptive, or misleading because it will frequently be false to the extent that the letter suggests that an attorney was directly involved in the process by which the letter was prepared and sent and that the attorney had formed a professional opinion as to how the individual debtor's case should be handled); *Miller v. Wolpoff & Abramson, LLP.*, 321 F.3d 292, 304 (2nd Cir. 2003) (finding a mere review of basic information such as name, social security number, address, telephone number, account number and alleged balance due alone is not the exercise of professional judgment needed concerning the existence of a valid debt before sending a collection letter—some degree of attorney involvement is required before a letter will be considered "from an attorney" within the meaning of the FDCPA).

Under the NCPA "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. St. § 59-1602. The NCPA provides a cause of action to "any person who is injured in his or her business or property" resulting from a violation. Neb. Rev. St. § 59-1609. Like the FDCPA, the NCPA is remedial consumer protection statute that is to be liberally construed. See *Kuntzelman v. Avco Fin. Servs. of Neb., Inc.*, 291 N.W.2d 705, 707 (1980).

    III.    DISCUSSION

The court has conducted a rigorous de novo review of the magistrate judge's finding and recommendation and the evidence presented in connection with the class certification issue. The court agrees that the plaintiff has shown that class action is appropriate.

The common contention among class is that PHM's standard debt collection leader was misleading in that it failed to state the party that would assume the validity of the debt and implied an attorney reviewed and supervised the mailing. The misleading nature of the letter and the adequacy of review are issues pivotal to the lawsuit and capable of determination "in one stroke." *Dukes*, 131 S. Ct. at 2551. The class members here have all allegedly suffered the same injury—they received a debt collection letter that did not specify that the debt would be assumed valid <u>by the debt collector</u> in violation of the FDCPA, and they received a communication from a debt-collecting attorney that was misleading in that it implied an attorney had reviewed and verified the debt, when in fact the attorney debt collectors had not done so.

The issue of whether PHM's standardized practices violated the FDCPA and the NCPA is the most significant issue in this case. No individualized inquiry is necessary on the issue of liability. This case presents the classic case for treatment as a class action: that is, the commonality linking the class members is the dispositive question in the lawsuit. The court is not convinced that determining whether the individuals who received the subject letters—560 individuals in all—had incurred consumer as opposed to business debt involves individual issues that predominate over the common questions involved in this case. Plaintiffs have shown that the task of distinguishing

between personal and business debts can be efficiently performed by examining the defendant's records and/or the underlying documentation for the debts.

Contrary to the defendant's assertions, the need to differentiate between consumer transactions and business transactions does not render the class unidentifiable or defeat the predominance requirement. This court's review of the evidence shows that the debts were most likely primarily incurred for consumer or household purposes. The evidence shows that PHM sent the debt collection letter to the plaintiff on behalf of FIA Card Servs., Inc., Bank of America's credit card processing arm. Tyler Grimm testified that most of the accounts he reviewed were consumer credit-card accounts. Plaintiff has demonstrated through his declaration that his financial obligation was incurred on a credit card issued by Bank of America with which he purchased goods and services primarily for personal or household use.

The information as to the nature of the underlying obligation with respect to other class members is either in the possession of PHM, or, by defendant's admission, can be readily obtained from its client, FIA. Both Grimm and Pech testified that the information could be obtained from FIA by merely asking for it.[10] The plaintiff has shown that it is sufficiently administratively feasible to identify the class through the defendant's records.[11] The court is persuaded by the rationale expressed in numerous cases that

---

[10] This issue is closely related to the discovery dispute between the parties involving the propriety of subpoenaing the records of FIA. *See* Filing No. 115, Plaintiff's Objection To Magistrate Judge's Order On Motion To Compel, Filing No. 111, Order on Motion To Compel, Filing No. 93, Motion to Compel.

[11] Jenkins proposes that whether the class members' alleged credit card debts were incurred for consumer or business can be determined through a three-step process involving ascertaining whether the debt was incurred in the name of an individual or a business, reviewing a credit card account to determine the purchases made with the credit card (purchases of clothing, groceries, medical services and products, etc., would presumably for personal purposes), and finally by asking class members if the credit card was

have held that the need to differentiate business from consumer debt is not an obstacle to class certification. *See supra* at 14-15. That a portion of a debt may be shown to have been incurred for a business or commercial purpose will not negate a showing that the primary obligations incurred on the credit cards were for personal or household expenses. The court finds the plaintiff has met his burden of demonstrating that the class is ascertainable.

Further, the court is familiar with the experience and competence of proposed class counsel and finds Proposed class counsel can adequately prosecute the interests of the class. Also, plaintiff's claim is typical of the claims of other putative class members, all of whom received the same allegedly misleading letter. The record also shows that a similar attorney-review procedure was followed in all the cases.

Further, the court agrees with the magistrate judge's conclusion that a class action is superior to other methods of adjudication of the controversy. Because of the ceiling on recovery and the difficulty of proving actual damages, an individual has little incentive to bring a solo action to vindicate his or her rights. In light of the consumer-protection goals of the FDCPA and NCPA, which permit, even encourage, consumers to act as private attorneys general to pursue FDCPA claims, the court finds certifying a reasonably ascertainable FDCPA class for purely statutory damages will serve the purposes of the Act, which is targeted at abusive debt collector activities.

THEREFORE, IT IS ORDERED:

---

primarily used for family, household, or business purposes or primarily used for business purposes. Filing No. 78, Reply Memorandum in Support of Plaintiff's Motion for Class Certification at 5-14.

1. The defendants' objection (Filing No. 114) to the F&R of the magistrate judge (Filing No. 110) is overruled.

2. The Findings and Recommendation of the magistrate judge (Filing No. 110) is adopted and incorporated herein by reference.

3. The plaintiff's motion for class certification (Filing No. 41) is granted in part and denied in part as set forth in the magistrate judge's Findings and Recommendation (Filing No. 110) and in this order.

4. A class is certified consisting of:

(i) all persons residing in Nebraska (ii) to whom Defendants Mr. Pech and/or Pech, Hughes sent, or caused to be sent, a letter in the form of Exhibit A, (iii) in an attempt to collect a purported obligation which, as shown by the nature of the alleged obligation, Defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

5. Defendants' motion (Filing No. 128) to strike the plaintiff's second supplemental declaration (Filing No. 103-1) is denied.

DATED this 12th day of June, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge